**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ELIZABETH ROMANO** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | No. 21 CV 1463 |
| ) | |
| **ROUNDY'S ILLINOIS INC. d/b/a MARIANO'S**) | |
| ) | |
| **Defendant.** ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS
& PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS REQUIRING DENIAL OF
SUMMARY JUDGMENT**

NOW COMES Plaintiff, ELIZABETH ROMANO, by her attorneys, DRISCOLL LAW OFFICES P.C. and for her Response to Defendant's Statement of Facts and Statement of Additional Facts Requiring Denial of Summary Judgment states as follows:

***PLAINTIFF'S RESPONSE TO DEFENDNAT'S STATEMENT OF FACTS:***

***Parties Venue & Jurisdiction***

1. Undisputed

2. Undisputed

3. Undisputed

***Statement of Facts & Procedural Background***

1. Undisputed

2. Undisputed

3. Undisputed

4. Undisputed

5. Undisputed

6. Undisputed

7. Undisputed

8. Plaintiff testified that she never heard the term U-Boat, and did not know what a U-boat was. Plaintiff does not dispute that she went to the area because she saw the sale sign for shrimp. (Elizabeth Romano Dep. marked as Ex. E to Defendant's Motion P 14 L 1-10). Plaintiff disputes that she stepped around the U-Boat cart. (Ex E P 15 L 17 – 21).

9. Undisputed

10. Undisputed

11. Plaintiff does not dispute that she walked parallel to the U-Boat which was behind her. (Ex. E at P 16 L 11-20).

12. Plaintiff acknowledges that she turned around.

13. Disputed. Plaintiff was not sure of her exact thought process at the time. (Ex. E at P 19 L 2-7).

14. Plaintiff acknowledges that one of multiple options would have been to go back the same way she came.

15. Plaintiff does not dispute that she testified that she thought she was safe for a split second just prior to the incident. (Ex. E at P 20 L 1-5).

16. Plaintiff does not dispute that there was nothing in front of her, and all she saw was the freezers on the other side of the aisle and she took a step as she finished her turn and fell. (Ex. E at P 59 15-24).

17. Plaintiff does not dispute that she did not know her exact intent at the time of the incident because within a split second after stepping she fell. (Ex. E at P 21 – L 23 –

P 22 L4, Video attached hereto as Exhibit 1).

18. Undisputed

19. Undisputed

20. Plaintiff did not see the bottom of the cart extending as long as it did, she was looking straight forward. (Romano Dep. at P 23 L 19 – P 24 L1).

21. Plaintiff was looking straight forward at some point.

22. Plaintiff acknowledges that she did no know how long the cart extended.

23. Plaintiff acknowledges that her concentration was directed at the shrimp prior to the accident. (Romano Dep. at P 24 L13-17).

24. Plaintiff disputes this fact. The video depicts her looking at the display of champaign immediately before falling. (Exhibit 1).

25. Undisputed

26. Undisputed

27. Undisputed

28. Plaintiff does not dispute that defendant's employee made this statement in her deposition.

29. Undisputed that he testified to that fact.

**PLAINTIFF'S STATEMENT OF FACTS IN OPPOSITION TO SUMMARY JUDGMENT MOTION:**

1. Video of Plaintiff's fall is attached hereto as Ex "1".

2. Elizabeth brought her cart over to the shrimp freezer and begins looking at the shrimp. She shuffles sideways while continuing to look at the shrimp. (Video - Ex. 1  Ex. E at P 17 L 1-15).

3. She was angled left as she is moving towards where the cart was and her focus was on the shrimp refrigerator. (Ex. E at P 57 L12- P 58 L2).

4. Elizabeth saw the boxes on the end of the cart but she didn't realize the cart was as long as it was beyond the boxes and had never seen a U-Boat type of cart before. (Ex. E at P 14 L 4-10; P 15 L 10 – 13)

5. She continues to shuffle step looking left at the shrimp, taking multiple steps and the cart is behind her. She takes a package of shrimp and examines it. (Ex. 1 – Video, Ex. E at P 58 L 13 – 19).

6. At the time of the accident, she turns and doesn't see anything in front of her other than the freezers of food on the other side of the aisle, and she thought it was safe to proceed forward to step. (Ex 1 - Video, Ex E at P 19 L8 – P 20 L5).

7. When she makes the turn, things happen quickly. She is facing the shrimp, makes a turn and steps almost instantaneously and falls. (Ex. E at P 59 L 5-23).

8. Elizabeth's shin struck the platform of the cart when she took the step. (Ex. E at P 29 L 1-4, Ex 1 - Video).

9. She steps as she finishes her turn and falls. (Ex. 1 – Video, Ex. E at P 59 L 20 – 24).

10. Just prior to the fall, Elizabeth was not able to continue to move to her right because she was impeded by a display of champaign. (Ex. 1 video).

11. Elizabeth looks at the champaign display that is impeding her ability to move right just prior to her falling. (Ex. 1 video).

12. Directly next to the U-boat involved in the accident was a regular cart. (S. Williams Dep. marked as Exhibit F to Defendant's Motion at P 22 L 17-24).

13. The U-boat cart is five feet by a foot and a half. (Ex. F at P 8 L 12 – P 9 L 5).

14. The area of the U-Boat cart with nothing stacked on it, would be an open area from the platform of the cart all the way up. So if a person is looking, one would see right across to the other side of the store. The side rails for a U-boat are approximately 5 feet high. (Ex. F at P 24 L20 to P 25 L16).

15. Safety was part of store director, Jeffrey Atkins responsibilities at Mariano's. (Atkins Deposition marked as Exhibit G to Defendant's motion at P. 12 L7 – 12).

16. Regarding policies and procedures for the use of U-boats, Mr. Atkins testified that when an employee gets to an area, he or she needs to make sure that there is access for the customers on both sides of the U-boat so there is a free path for the customer on each side. (Ex. G at P 8 L 19 – P 9 L 7).

17. Uboats used at Mariano's were approximately 8 to 10 inches off the ground, approximately five feet long, and 12 to 13 inches wide. (Ex G at P 12 L 13 – P 13 L3).

18. Pursuant to store director Atkins, employees should park a U-boat so that there is a safe path on each side of the U-boat, a little more than 12 inches. There should be a clear path of egress on both sides of the cart. (Ex. G at P 15 L 24 to P 16 L 4).

19. It would not be acceptable to Mr. Atkins if you were only able to enter the area between the shelf/freezer and the U-Boat from one side and not be able to walk all the way through to exit, you would need a path on both sides. (Ex. G P 16 L10-21)

20. Mr. Atkins testified that from a safety perspective, his expectation was that there would be a path if your walking between a freezer and a Uboat you'd be able to walk all the way through and keep going straight and exit. If someone parked a U-boat that didn't have a clear path on both sides that would be something that he would want to

correct because it could be a potential safety hazard. (Ex. G at P 16 L15 – P 17 L5; P 17 L24 – P 18 L 8).

21. Per Mariano's safety policies and procedures, even if a customer has his or her back to a U-boat parked by a freezer, the customer should be able to keep walking with their back to the cart because there should be a clear path for them to get past the U-boat and keep walking beyond it. That was Jeffrey Atkin's expectations as a safety manager and that is the policy of Mariano's. (Ex. G at P 19 L 18 to P 21 L 2).

22. It is not a best practice to have a regular shopping cart where you place the cardboard from boxes the employee is unloading from the U-Boat. (Ex. G at P 23 L6 – L 18).

 

Respectfully submitted,

**DRISCOLL LAW OFFICES P.C.**


By:    /s/ John J. Driscoll
       One of Plaintiff's Attorneys

DRISCOLL LAW OFFICES
1770 Park St.
Suite 205
Naperville IL 60563
630/548-6600
jdriscoll@driscolllawoffices.com