## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ELIZABETH ROMANO, | |
| Plaintiff, | |
| v. | No. 21-cv-1463 |
| ROUNDY'S ILLINOIS, LLC, d/b/a MARIANO'S, | Magistrate Judge McShain |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Elizabeth Romano filed this suit in the Circuit Court of McHenry County, Illinois, against Roundy's Illinois, LLC, d/b/a Mariano's ("Mariano's"), seeking damages for injuries she suffered as a result of a fall at a Mariano's grocery store in Crystal Lake, Illinois. Romano alleges that Mariano's negligently left a "U-boat" style cart in the aisle, that she tripped over the cart while shopping, and that Mariano's negligence proximately caused Romano's fall and injuries. [1-1] 1-2, ¶¶ 4-8.[1] Mariano's timely removed the suit to this Court under 28 U.S.C. § 1332(a) on the basis of diversity jurisdiction [1].

Pending before the Court is Mariano's motion for summary judgment. [23].[2] For the following reasons, the motion is denied.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number.

[2] The parties consented to the reassignment of this case to a magistrate judge to conduct all proceedings. [10].

### Standard of Review

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues of material fact are not demonstrated by the "mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "[t]he controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty. Sch. Dist.*, 673 F3.d 746, 751 (7th Cir. 2012).

In resolving a motion for summary judgment, the Court construes all evidence and draws all reasonable inferences in the non-movant's favor. *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010). However, the Court makes "only reasonable

inferences, not every conceivable one." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014).

## Local Rule 56.1 Statements and the Use of Video Evidence

Before the Court can determine and present the undisputed material facts on summary judgment, there are a few threshold issues and disputes in the parties' Local Rule 56.1 statements that require clarification or resolution.

Local Rule 56.1 prescribes the format that summary judgment proceedings must take. Under the rule, the party seeking summary judgment must include with its motion "a statement of material facts," and each asserted fact "must be supported by citation to the specific evidentiary material . . . that supports it." L.R. 56.1(a)(2), (d)(2). The Court may "disregard any asserted fact that is not supported with such a citation." *Id.* The non-movant then files a response to the movant's statement of material facts, and the rule requires that the response shall set forth the text of the asserted fact (including its citations to the supporting evidentiary material). . . ." L.R. 56.1(b)(2), (e)(1). The rule expressly states that, in order to dispute an asserted fact, a party "must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." L.R. 56.1(e)(3). The rule goes on to state that "[a]sserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3); *see also Cracco v. Vitran Express, Inc.,* 559 F.3d 625, 632 (7th Cir. 2009) (failure to dispute facts in the manner required by local rules allows the court to conclude "those facts are deemed admitted for purposes of the motion."). The non-movant may also add

additional undisputed facts in response, to which the movant may reply. L.R. 56.1(b)(3), (c)(2). The requirements that asserted facts, or any disputing of facts, be supported with specific citations to evidentiary material applies to these statements of additional facts by the non-movant and any reply by the movant. L.R. 56.1(e)(2)-(3).

Mariano's filed its statement of facts [24], Romano filed her response along with her statement of additional facts [27], and Mariano's filed its additional response to Romano's additional facts [31]. Neither party, however, complied with L.R. 56.1(e)(1) in their responses to the other parties' statements of fact, in that they did not "set forth the text of the asserted fact (including its citations to the supporting evidentiary material)." Rather, the parties only set forth their responses without repeating the text of the asserted fact. This has made the Court's task in reviewing the parties' respective statements needlessly more difficult.

More notable, however, is Mariano's failure to comply with L.R. 56.1(e)(3), which states that in order to dispute an asserted fact, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." In several of Mariano's responses to Romano's statements of additional facts, Mariano's merely asserts that a fact is "disputed," but cites to no record evidence for support, nor provides any explanation for why the fact is disputed. *See* [31] 2-3, ¶¶ 6, 9, 20, 22. The Court will thus deem those facts admitted, provided of course that Romano has herself cited to sufficient evidentiary support for them. *See* L.R. 56.1(e)(3); *Cracco,* 559 F.3d at 632.

A further issue with Mariano's response to Romano's statement of facts that the Court needs to address relates to Romano's reliance on video evidence, specifically certain store surveillance camera footage from the day of the accident. [28]. When there is video evidence in the record, the Court may rely on the video "to the extent that it establishes the events 'with confidence' and 'beyond reasonable question.'" *See Est. of Eason by Eason v. Lanier*, No. 18 C 5362, 2021 WL 4459469, at *2, 7 (N.D. Ill. Sept. 29, 2021) (citing *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 984 (7th Cir. 2021) (a court may "take stock" of video evidence "without favoring the nonmovant where the video contradicts his view of the facts."). Romano cites to the video surveillance evidence in support of many of her asserted facts, and also in order to dispute some of Mariano's asserted facts. *See* [27] 2-3, ¶¶ 7, 24; 3-6 ¶¶ 1-2, 5-6, 8-11.

In its reply statement of facts, Mariano's repeatedly objects to Romano's reliance on the video surveillance evidence, arguing that "Plaintiff's counsel's subjective opinions of what is contained in the video do not constitute as [sic] statement of fact." *See* [31] 1, ¶24; 2-3, ¶¶ 5, 10, 11. For example, in response to several of Romano's asserted facts in which Romano points only to the video for support, Mariano's responds by disputing the fact as "Plaintiff's counsel's subjective opinion" of what is contained in the video, though in those instances Mariano's does not offer its own contention of what is depicted in the video, nor does it explain the extent to which it disputes Plaintiff's description. [*Id.*]. Mariano's repeats its complaint about Romano's reliance on the video evidence in its reply brief, stating that "Plaintiff's counsel's own subjective testimony of what is depicted in the video is

improper and is not evidence. It must be disregarded." [30] 2. Ironically, Mariano's then goes on in the next several sentences of its brief, which was presumably prepared by its own counsel, to describe what *it* contends is "clearly shown in the video." [*Id.*].[3] In any event, it appears to the Court that the crux of Mariano's dispute is not Romano's use of the video evidence itself, but rather with her contentions in her statement of facts about what the video depicts. Indeed, Mariano's raises no admissibility or foundational objections to the video itself, and in addition to arguing what the video "clearly shows" in its own briefing, its opening statement of facts attaches screen shot images taken from the video footage. *See, e.g.,* [24] 2, ¶ 4; [30] 2.

Mariano's is correct in the limited sense that the mere fact that Romano has asserted that the video depicts certain facts does not, on its own, establish those facts. Rather, as noted above, the Court may "take stock" of the video evidence without favoring Romano "where the video contradicts [her] view of the facts." *See Lopez,* 993 F.3d 981, 984. However, this does not mean, as Mariano's suggests, that the Court may never accept Romano's contention of what the video depicts. It may do so "to the extent that [the video] establishes the events 'with confidence' and 'beyond reasonable

---

[3] It is unclear why Mariano's goes to such lengths to assert that Romano's contentions of what is depicted in the video should be disregarded as "Plaintiff's counsel's subjective opinion," only to turn around and make its own subjective assertions via a brief prepared by its counsel about what the video "clearly shows." While it should normally go without saying, Mariano's briefing has made it necessary for the Court to comment that, of course, *any* time a represented party makes assertions about what some piece of evidence shows, video or otherwise, they necessarily make those assertions through their counsel. But the fact that the assertions come from counsel do not change the fact that they are ultimately the party's contentions. The Court need not dwell on this point, given the caselaw discussed herein which allows it to take independent stock of the video. It suffices to say that Mariano's suggestion that the Court must disregard Romano's assertions about what is depicted in the video, simply because those assertions were prepared by her counsel, is wholly without merit.

question.'" *See Est. of Eason by Eason*, , 2021 WL 4459469, at *2, 7. The Court thus rejects Mariano's blanket assertion that Romano's description of the video must be disregarded. The Court has reviewed the video, and may accept Romano's assertions about what it depicts to the extent those facts can be established "with confidence" and "beyond reasonable question" from the video.

## Statement of Facts

Unless indicated otherwise, the following facts are taken from the parties' Local Rule ("L.R.") 56.1 statements, [24]; [27]; [31], and the video containing footage from a store surveillance camera on the day of the accident. [28]. Where the parties disagree over relevant facts, the Court presents each side's position. However, the Court construes all evidence and draws all reasonable inferences in Romano's favor, as required on a motion for summary judgment. *Malen*, 628 F.3d at 303.

On September 28, 2020, Romano was shopping at a Mariano's grocery store located in Crystal Lake, Illinois. [24] 2, ¶ 1; [1-1] 1, ¶¶ 1-2. Romano approached a freezer containing sales items, including shrimp. [27] 3, ¶ 2. The freezer, a roughly waist-high shelf, is the kind that shoppers reach down into for items. [24] 3, ¶ 10; [24-4]; [28]. A "U-shaped" or "U-boat" cart was positioned in front of and parallel to one end of the freezer, with an empty space in between the cart and the freezer. [24] 3, ¶¶ 10-11; [24-4]. The U-boat cart was five feet long, a foot and a half wide, with approximately five-feet high U-shaped rails at either end. [27] 4-5, ¶¶ 13-14. The platform of the cart was approximately eight to ten inches off the ground, such that if the cart had nothing stacked upon it a person would be able to see across the cart

to the other side. [27] 5, ¶¶ 14, 17. At the time of the accident, the U-boat cart in front of the freezer had boxes stacked on one end of the cart up to about the height of the U-shaped rail, and the remainder of the cart was empty. [24] 4, ¶ 19; [24-4.]; [27] 3, 4, ¶ 4.

Romano testified that she brought her shopping cart over to the freezer because she saw a sale sign for shrimp. [24] 2, ¶ 8; [27] 3, ¶ 2. Romano began looking down at the shrimp in the freezer, and then proceeded to "shuffle" sideways along the length of the freezer while continuing to look at the packages of shrimp. [27] 3, ¶ 2. As Romano moved along the freezer toward where the U-boat cart was, her focus was on the shrimp and, eventually, her back was to the U-boat cart. [*Id.*] 4, ¶ 3. Romano stated in her interrogatory answers that when she went over to look at the shrimp in the freezer, she "saw a stack of boxes on some type of cart," but that she "never saw the cart or the platform for the cart" and did not know the "cart extended as far as it did." [24] 4, ¶ 19; [27] 4, ¶ 4. Romano further claims that she had never seen a U-boat type of cart before this time, [27] 4, ¶ 4, though Mariano's notes that Romano's actual testimony was that she "never heard the term U-boat" and did not realize what a U-boat was, not that she had never seen one. [31] 2, ¶ 4; [24-5] 14:4-5.

The parties present somewhat conflicting descriptions of what happened next as Romano started moving along the freezer. Mariano's suggests that Romano walked up to and "stepp[ed] around the U-boat shaped cart," and then continued to walk parallel between the cart and the freezer. [24] 2-3, ¶¶ 8, 11. Romano agrees that she walked parallel between the cart and the freezer, but disputes that she "stepped

8

around" the cart. [27] 2, ¶¶ 8, 11. Instead, Romano states she continued to shuffle step to the end of the freezer while looking at the shrimp, such that the U-boat cart was directly behind her, and that she then stopped, took a package of shrimp, and examined it. [27] 4, ¶ 5; [24-4] 3; [28]. Mariano's disputes this description, stating that it is "Plaintiff's counsel's subjective opinion[] of what is contained in the video" and that it "does not constitute as [sic] statement of fact." [31] 2, ¶ 5. In any event, both parties at least agree that Romano continued to move parallel along the freezer in the space between the U-boat cart and the freezer, and this much is plainly evident from the video footage. [28]. Further, despite Mariano's objection to Romano's description of the video, it is also "beyond reasonable question" from the footage that, when Romano moves in between the U-boat cart and the freezer, she does turn her back to the U-boat cart to pick up a package of food from the freezer to examine it. [28].

Romano next claims that she could not continue moving sideways in the same direction along the freezer and past the U-boat cart because there was a stack of boxes containing bottles of champagne and a shopping cart blocking her path. [24-4] 1; [27] 4, ¶¶ 10-11. Defendant disputes Romano's assertion that there were boxes of champagne blocking Romano's path forward, or that she ever saw the boxes, again stating that these facts represent "Plaintiff's counsel's subjective opinions of what is contained in the video. . . ." [31] 2, ¶¶ 5, 10-11. Upon review of the video and the screen shots attached to Mariano's statement of facts, however, the Court can say "with confidence" and "beyond reasonable question" that there was in fact a stack of

9

boxes containing bottles and a shopping cart blocking Romano's path beyond the U-boat cart at the end of the freezer. [24-4]; [28]. Whether those boxes specifically contained champaign bottles, and whether Romano specifically noticed them, is somewhat unclear though. Regardless, the parties both agree that Romano could also have exited back the same way she came. [24] 3, ¶ 14.

The parties vigorously dispute the sequence of the events that happen in the span of the next few seconds after Romano reached the end of the freezer. Mariano's claims that Romano intended to "keep going, [and] to pick up her shopping cart" after looking at the shrimp, but Romano notes that she testified that she was not sure of her thought process at that time and did not know what her intended path was. [24] 3-4, ¶¶ 13, 18; [27] 2, ¶ 13. Regardless of her specific intent, Romano then started to turn around away from the freezer, and claims that in that moment she did not see anything in front of her and thought she was safe to step forward. [27] 4, ¶ 6; [24-4] 6.[4] Romano did not look down and see the platform of the U-boat cart, testifying that she only saw the doors of freezer cases in front of her across the aisle. [24] 3, ¶ 16; [27] 4, ¶ 6 [24-4] 6. Romano then stepped forward as she was finishing her turn away

---

[4] In its response to Romano's statement of facts, Mariano's claims these facts are "disputed," but it includes no explanation or record citation explaining why they are in dispute [31] 2, ¶ 6. As noted above, this alone is grounds to deem these facts admitted as Romano has presented them. The Court further notes though that Mariano's itself asserts similar facts in its opening statement. Specifically, Mariano states that "Plaintiff turned around from the freezer with the shrimp and faced the opposite direction" and that "she did not see anything in front her [sic], she mistakenly thought she was safe, and does not know why." [24] 3, ¶¶ 12, 15. It is unclear why Mariano's is disputing facts that appear identical to facts it has itself set forth. Regardless, as Mariano's has not properly disputed these facts, and separately claims essentially the same facts, the Court treats Plaintiff's description here as admitted.

from the freezer, and, as she did so, her shin struck the platform of the U-boat cart and she fell. [27] 4, ¶¶ 8-9.[5] As a result of her fall, Romano sustained several injuries including bilateral fractures to her wrists. *See* [24] 2, ¶ 1; [1] 1, ¶ 2; [1-1] 2, ¶ 8.

As to why Romano did not notice the platform of the U-boat cart before stepping, Mariano's notes that Romano could not say whether something diverted her attention. [24] 4, ¶ 24. Romano claims however that the video depicts her looking at the champagne display immediately before falling. [27] 4 ¶ 11. Mariano's disputes this fact, repeating its objection that it amounts to plaintiff's counsel subjective characterization of the video, and further that it contradicts Romano's own testimony that she was unaware of the champaign until seeing the video. [27] 3, ¶ 24; [31] 1; [24-5] 21:14-16. As noted above, the video confirms there was a stack of boxes with bottles blocking Romano's path. But, in the moment Romano turns away from the freezer and towards the U-boat cart, her back is to the security camera, and there is no way to tell with confidence from the video whether she specifically noticed the boxes. [28]. Indeed, as discussed further below, Romano's own testimony suggests she did not. [24-5] 21:18-19.

Finally, in addition to the video and testimony from Romano, the parties also cite to the testimony of Mariano's store employee, Jeffrey Atkins, the director for Mariano's Crystal Lake location, who testified that employees generally are supposed

---

[5] Mariano's disputes Romano's assertion that she "step[ped] as she finish[ed her turn" and fell. [31] 2, ¶ 9. Again however, Mariano's simply states the fact is disputed with no explanation or citation to evidence, which is not sufficient to dispute a fact. This moment in the video transpires in one or two seconds, and is thus somewhat difficult to describe "with confidence." Given that Mariano's has not properly disputed the fact and the video is ambiguous, the Court accepts Romano's description as admitted.

to park U-boat carts with a clear path of egress on both sides of the cart, a little more than twelve inches, to create a "clear path for the customer." [27] 5, ¶ 18; [24-7] 15:24-16:4. Atkins responded affirmatively when asked whether the lack of clear path "could be a potential safety hazard" and he would want employees to correct that lack of a clear path, per his expectations as a safety manager and Mariano's policy. [27] 5-6, ¶¶ 20-21.[6] On the other hand, Sydney Williams, also an employee at Mariano's Crystal Lake location, testified that there are no safety issues with U-boat carts because they are open and obvious, a person can walk around the carts, and she was not aware of anyone ever tripping over a U-boat cart. [24] 5, ¶¶ 28-29; [24-6] 6:14.

## Discussion

To establish a cause of action for negligence under Illinois law,[7] a plaintiff must prove "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990); *see also Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018).

Mariano's argues that summary judgment is proper because it owed no legal duty to Romano under the circumstances here. [25] 1-2; *see Bucheleres v. Chi. Park*

---

[6] Mariano's "disputes"—again with no explanation or citation to evidence—Romano's contention in paragraph 20 concerning Atkin's testimony and expectations as a safety manager. The fact is thus deemed admitted.

[7] In diversity actions, federal courts apply federal procedural rules and state substantive law. *See Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1033 (7th Cir.1998) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *see also Jones v. Graphic Arts Finishing Co.*, No. 08 C 3327, 2012 WL 10131038, at *3 (N.D. Ill. Jan. 13, 2012) ("federal courts sitting in diversity apply federal law to resolve procedural and evidentiary issues").

*Dist.*, 665 N.E.2d 826, 832 (Ill. 1996) ("where there is no duty there is no liability").[8] The duty inquiry asks "whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff." *Ward*, 554 N.E.2d at 226. Whether a duty exists in a particular case is generally a matter of law to be determined by the court. *Id*. However, as discussed further below, sometimes the question of whether a duty exists is a mixed question of law and fact, and therefore the Court must deny summary judgment "if there is a genuine issue as to the underlying material facts that would establish a duty." *Rich v. Quad/Graphics Printing Corp.*, 11 C 7656, 2014 WL 5835623, at *3 (N.D. Ill. Nov. 10, 2014) (citing *King v. NLSB*, 730 N.E.2d 1222, 1225 (Ill. App. Ct. 3rd Dist. 2000).

In order to determine whether a duty exists, courts generally consider four factors: "(1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Dunn*, 880 F.3d at 906 (quoting *Wilfong v. L.J. Dodd Constr.*, 930 N.E.2d 511, 519 (Ill. 2010)).

For the following reasons, the Court finds that there is a genuine dispute as to the underlying facts that would establish whether Mariano's owed Romano a legal duty. Specifically, there is a genuine dispute as to whether the risk from the U-boat cart was apparent and thus it was an open and obvious condition. Further, even if

---

[8] Mariano's does not advance any arguments with respect to breach of duty, proximate causation, or injury, so the Court need not separately address those issues.

the U-boat cart was an open and obvious condition, there is a genuine dispute as to whether Mariano's should have anticipated that invitees like Romano would have been distracted from the risk. The Court therefore cannot conclude as a matter of law that Mariano's owed Romano no legal duty of care, and the motion for summary judgment must be denied.

### A. Whether the U-boat Cart Was an Open and Obvious Condition Presents a Genuine Issue of Material Fact.

Mariano's first argues that it did not owe a duty to the Plaintiff because the U-boat cart was an open and obvious condition. Businesses generally owe their invitees a duty of reasonable care. *Ward*, 554 N.E.2d at 227 ("The operator of a business, though not an insurer of his customer's safety, owe[s] his invitees a duty to exercise reasonable care to maintain his premises in a reasonably safe condition for use by the invitees."). However, under the "open and obvious rule," which functions as an exception to the general duty of care, a business "is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Bruns v. City of Centralia*, 21 N.E.3d 684, 689 (Ill. 2014) (quoting *Rexroad v. City of Springfield*, 796 N.E.2d 1040, 1046 (Ill. 2003)); *see also Dunn*, 880 F.3d at 906. For a danger to be "obvious," it must be one that the "reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment" would recognize "both the condition and risk." *Bruns*, 21 N.E.3d at 690 (quoting Restatement (Second) of Torts § 343A Comment b, at 219 (1965)); *see also Deibert v. Bauer Brothers Constr.*

14

*Co.*, 566 N.E.2d 239, 241 (Ill. 1990) (noting that Illinois has adopted the rules set forth in the Restatement (Second) of Torts § 343A).

Importantly, "[t]he scope of defendant's duty is not defined by reference to plaintiff's negligence or lack thereof," and is instead assessed on an objective basis. *See Ward*, 554 N.E.2d at 230. The open and obvious rule goes to the first two factors of the duty analysis: the foreseeability of injury and the likelihood of injury. "Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Bruns*, 21 N.E.3d at 690 (internal citation omitted). Although, as noted above, the duty inquiry is generally a question of law, the issue of "[w]hether a dangerous condition is open and obvious may present a question of fact." *See id.* On the other hand, if the physical nature of the condition and risk is not disputed, "whether the dangerous condition is open and obvious is a question of law." *Id.*

Here the parties vehemently disagree as to whether the U-boat cart was an open and obvious condition. [25] 2; [26] 2. It is undisputed that the U-boat cart was present before Romano approached the freezer containing shrimp, and Romano testified that she saw it. [24] 4, ¶¶ 19, 25; [28]. Mariano's further claims, and Romano disputes, that Romano stepped around the U-boat cart while moving parallel to the freezer. [24] 2, ¶¶ 8, 11; [27] 2, ¶¶ 8, 11. In Mariano's' view, because Romano decided to step around this already-present condition, the U-boat cart was plainly an open and obvious object and thus the "likelihood of injury from tripping" on the cart was

slight. [25] 9, 12. Mariano's further asserts that it did not have "constructive notice of anyone else tripping over a U-shaped cart." [25] 9.

Romano, on the other hand, argues that the risk posed by the U-boat cart was not obvious given its location. [26] 2. Romano argues that she had never seen a U-boat cart before, "had no idea that it was five feet long or that it extended beyond the boxes," and suggests that the lack of a clear path to exit on the other side of the cart constituted "a potential safety hazard that was not compliant with Mariano's own policies." [*Id.*] 5, 7. She further asserts that when she turned to step, she "had no idea the cart was directly behind her." [*Id.*] 5-7; [27] 4-6, ¶¶ 4, 6, 14, 18, 20-21.

Mariano's correctly notes the "test is not what an elderly lady, such as Elizabeth Romano, might observe, or fail to observe," but rather, what would be recognized by a "reasonable person" in Romano's position, "exercising ordinary perception, intelligence, and judgment." [25] 8-9; *see generally Sandoval v. City of Chicago*, 830 N.E.2d 722, 727 (Ill. App. Ct. 1st Dist. 2005) ("[T]he determination of whether the condition is open and obvious depends not on plaintiff's subjective knowledge but, rather, on the objective knowledge of a reasonable person confronted with the same condition."). However, the Court ultimately agrees with Romano that there is a genuine dispute of fact as to whether the condition was open and obvious, because a jury could find that a reasonable person in Romano's position would not have appreciated the risk posed by the U-boat cart, as it was positioned in the store that day.

*Stephen v. Home Depot*, a case from this District, is particularly instructive. Stephen was shopping at a Home Depot when she tripped on a garden hose that was "stretched across one of the aisles" in the store's garden center. *Stephen v. Home Depot U.S.A., Inc.*, No. 18 C 130, 2020 WL 7260803, at *2 (N.D. Ill. Dec. 10, 2020). Stephen had previously visited that particular store, recalled noticing hoses on the ground in the garden center during at least one of her prior visits, and admitted that she generally knew that Home Depot employees watered plants in the garden center. *Id*. A Home Depot employee testified it was a bright day and that "customers typically frequent the garden center without incident while employees water plants." *Id.* at *3. Home Depot also "had no record of another incident involving a customer tripping over a hose in the garden department" in that store in the three years prior to plaintiff's fall. *Id.* The parties did not dispute the presence of the hose, nor that the store had adequate lighting. *Id.* at *4.

However, Home Depot did not "present any evidence to contradict Stephen's testimony that she could not see the hose when turning the corner." *Id.* While the court acknowledged that Stephen's "subjective knowledge does not control the inquiry," the court was nonetheless persuaded that her testimony that she personally did not see the hose while rounding a corner created a factual dispute as to whether a reasonable person in her position also may not have seen the hose when rounding the corner, and that such dispute required submission to a jury. *Id.* at *2 ("The Court must submit this factual dispute about the hose's visibility to a reasonable person in [plaintiff]'s shoes to a jury."); *see also Geleta v. Meijer, Inc.*, No. 11 CV 6567, 2013 WL

17

6797111, at \*6 (N.D. Ill. Dec. 23, 2013) ("[W]here plaintiffs have failed to notice a condition prior to slipping or tripping, courts consistently have found the open and obvious issue to be a question of fact."); *Buchaklian v. Lake Cty. Family Young Men's Christian Ass'n*, 732 N.E.2d 596, 601-602 (Ill. App. Ct. 2nd Dist. 2000) (finding a genuine issue of fact as to whether plaintiff should have seen a defect in a mat she tripped on, noting that in general such a dispute of fact could exist even if the plaintiff admitted she "could have seen the condition if [she] looked").

Here, similar to *Stephen,* Romano admits that she previously visited the Mariano's location in question, "had been shopping for over 50 years," and was "aware the stocking of shelves takes place throughout the day." [24-5] 10:18-20; [24] 4-5, ¶ 26. Also like *Stephen*, the parties here do not dispute the store was well lit, nor do they dispute that the U-boat cart was present prior to the accident. [25] 4, ¶ 25; [27] 4, ¶ 4; [31] 2, ¶ 4. However, although Romano admitted that she "saw a stack of boxes on some type of cart," Mariano's has presented no evidence to contradict Romano's additional testimony that she "had no idea the cart extended as far as it did," and that she "never saw the cart or the platform for the cart, at the location [she] stepped and fell." [24] 4, ¶ 19. In other words, while the U-boat cart may have been present and Romano generally noticed it, it is undisputed that Romano did not appreciate the full extent of the cart and the risk it posed because, critically, she testified that she did not see how far the cart extended and did not see the part of the cart, *i.e.* the platform of the cart eight to ten inches off the ground, that she tripped over after turning away from the freezer containing the shrimp.

It is true that what matters here is not Romano's subjective knowledge, but whether a reasonable person in her position would have appreciated the condition and the risk. But, similar to *Stephen,* the Court finds that Romano's uncontested testimony that she did not appreciate how long the U-boat cart was and did not see the platform of the cart before she stepped and fell, creates a genuine issue of material fact as to whether the condition was open and obvious, and such question must be resolved by a jury. *Stephen*, 2020 WL 7260803, at *2 (plaintiff's uncontested testimony that she did not see the hose while rounding the corner created genuine issue of fact as to whether a reasonable person in her position would have noticed the hose rounding the corner). Based on Romano's testimony, a jury could find that a reasonable person in her situation—exercising ordinary perception, intelligence, and judgment—who came across a U-boat cart with boxes stacked on the end closest to him or her, and a narrow path between the cart and a freezer full of sale items, would not have noticed that the cart extended as far as it did and would not have seen the platform of the cart positioned well below eye-level just eight to ten inches off the ground. Indeed, courts have routinely denied summary judgment and found a genuine issue of fact as to whether a condition was open and obvious where the plaintiff failed to notice a condition prior to slipping or tripping. *See Domantas v. Menard, Inc.*, No. 21 C 232, 2022 WL 204374, at *4 n. 5 (N.D. Ill. Jan. 24, 2022) (collecting cases); *see, e.g., Hamilton v. Target Corp.,* 2013 WL 6050441, at *3 (N.D. Ill. Nov. 15, 2013) (denying summary judgment and concluding that a genuine dispute existed as to whether puddle of water was an open and obvious condition

where plaintiff did not see it); *cf. Rosenberg v. Home Depot U.S.A., Inc.*, No. 16-cv-5272, 2019 WL 670262, at *4-5 (N.D. Ill. Feb. 19, 2019) (tripping hazard was open and obvious where the plaintiff admitted that he saw the hazard in question before attempting to step over it).

In short, there is a genuine issue as to whether a reasonable person in Romano's situation would have appreciated both the "condition *and the risk*" posed by the condition, and this precludes summary judgment. *See generally Racky v. Belfor USA Group, Inc.*, 83 N.E.3d 440, 467 (Ill. App. Ct. 1st Dist. 2017) ("The open and obvious doctrine applies only where *both* the condition and the risk are apparent to and would be recognized by a reasonable person."). This is true even though Romano herself may have been able to appreciate the full nature of the condition if she had just looked. *See Buchaklian*, 732 N.E.2d at 601.

Mariano's arguments and case cites to the contrary are unavailing. Mariano's points to some cases involving substantially different risks that were found to be open and obvious. *See Sollami v. Eaton*, 772 N.E.2d 215, 224-25 (Ill. 2002) (risk of "rocket-jumping" on a trampoline was open and obvious); *Sandoval*, 830 N.E.2d at 728 (risk was open and obvious from a large five-by-six foot section of sidewalk that was "missing most of its concrete surface, and the dirt underneath was exposed"). Performing "rocket jumps" on a trampoline plainly presents different risks than shopping in a store, and an unconcealed sidewalk defect is distinct from an U-boat cart with items stacked upon it at only one end that may have reasonably concealed

its length and platform. [27] 3, 5 ¶¶ 2, 14; [28].[9] Further, in some of Mariano's cited cases the courts in fact denied summary judgment because there was a question of fact as to the open and obvious nature of the hazard. *See, e.g., American National Bank & Trust Co. of Chicago v. National Advertising Co*, 594 N.E.2d 313, 320 (Ill. 1992) ("[w]hether in fact the condition itself served as adequate notice of its presence . . . are questions properly left to the trier of fact.") (alterations in original) (quoting *Ward*, 554 N.E.2d at 234); *Jackson v. TLC Assocs., Inc.*, 706 N.E.2d 460 (Ill. 1998) ("we do not believe that the open and obvious doctrine is dispositive of [plaintiff]'s claims").

Ultimately the Court finds that resolving this case at the summary judgment stage under the open and obvious rule would be improper. While Romano may have seen the cart, it is uncontested that she did not see how long it extended and did not see the platform of the cart she tripped on before she fell. In other words, Romano did not appreciate the full physical character of the cart and the risk it posed, which is sufficient to create a genuine dispute as to whether a reasonable person in her position would have done the same and failed to appreciate the risk. The Court thus

---

[9] Insofar as Mariano's points to other case examples that may involve more "comparable" hazards, the courts in those cases still imposed a duty under the distraction exception, which is discussed further below. *See Deibert,* 566 N.E.2d at 243 (affirming lower court rulings that found that, although a "tire rut" in the ground was obvious, the defendant still owed a duty of care under the distraction exception.); *Ward*, 554 N.E.2d at 232 (affirming lower court's finding that the "post with which plaintiff collided [was] not a hidden danger," but that the defendant store could reasonably foresee the risk it imposed to customers carrying bulky items because the post was so close to the store's entrance); *see also Rexroad*, 796 N.E.2d at 1047 (appearing to assume without deciding that hazard was open and obvious, but finding the distraction exception applied).These cases thus do not compel a different conclusion as to whether the cart was an open and obvious condition.

cannot conclude as a matter of law that the U-boat cart was an open and obvious condition, which precludes summary judgment. *See, e.g., Stephen*, 2020 WL 7260803, at *4.

### B. Whether the Distraction Exception to the Open and Obvious Rule Applies Presents Another Genuine Issue of Fact.

The Court could stop its analysis there, as its finding of a genuine dispute as to whether the U-boat was an open and obvious risk is grounds, on its own, to deny summary judgment. *See Knauss v. Wendy's Old Fashioned Hamburgers of New York, LLC*, No. 16 C 7657, 2018 WL 4503943, at *5 n.6 (N.D. Ill. Sept. 20, 2018) ("[B]ecause the Court declines to apply the open and obvious doctrine at the summary judgment stage, it need not address whether the distraction exception would apply."). However, the parties devote a significant portion of their briefing arguing whether the "distraction exception" to the open and obvious rule recognized by Illinois courts applies to this case. [29] 9-13; [26] 2-6. Because the parties raise the issue in their briefing, and the Court finds there is a genuine factual dispute as to whether the distraction exception applies, which provides an additional basis to deny summary judgment, the Court will address the issue. *See Stephen*, 2020 WL 7260803 at *5 (finding that even if the court agreed the hose was an open and obvious condition as a matter of law, there was a question of fact as to whether the distraction exception applied, thus precluding summary judgment).

The distraction exception applies "'where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious.'" *Sollami*, 772 N.E.2d at 223 (quoting Restatement (Second) of Torts §

343A(1) Comment f). "Where an exception to the open and obvious rule applies, the outcome of the duty analysis with respect the first two factors is 'reversed'" and favors the imposition of a duty. *Bruns,* 21 N.E.3d at 691 (quotations omitted).

However, "the distraction exception will only apply where evidence exists from which a court can infer that plaintiff was actually distracted." *Bruns,* 21 N.E.3d at 691. The mere fact that the plaintiff was looking elsewhere does not constitute a distraction. *Id.* at 692; *see also Kleiber v. Freeport Farm & Fleet, Inc.*, 942 N.E.2d 640, 649 (Ill. App. Ct. 3rd. Dist. 2010) ("In fact, plaintiff's own testimony established that she was not distracted. Plaintiff simply was not looking where she was going. Such testimony is not sufficient for the distraction exception to apply . . . ."); *Sandoval*, 830 N.E.2d at 730 (plaintiff distracted by concern for child whom plaintiff was supervising did not trigger the distraction exception because plaintiff's "personal inattentiveness" was not something the landowner was legally required to anticipate). Rather, the landowner must have "created, contributed to, or was responsible in some way for the distraction which diverted the plaintiff's attention from the open and obvious condition." *Sandoval*, 830 N.E.2d at 729. Additionally however, Illinois courts have repeatedly held that the distraction exception applies "even where the plaintiff was previously aware of the injury-causing condition, so long as a foreseeable distraction caused him to 'forget what he has discovered, or fail to protect himself against it.'" *Scott v. Menard, Inc.*, No. 16 C 723, 2017 WL 3421553, at *3 (N.D. Ill. Aug. 9, 2017) (quoting *Bruns*, 21 N.E.3d at 691). And, Illinois courts set no "'minimum time period" for a plaintiff to be distracted and momentarily forget about the injury causing

condition." *Id.* (holding there was a genuine dispute of fact as to whether plaintiff was distracted from a pallet jack he avoided just 28 seconds earlier); *see also Figas v. Aldi, Inc.*, No. 1–15–1117, 2015 WL 9463700, at *3 (Ill. App. Ct. 1st Dist. Dec. 23, 2015) (unpublished) (finding a genuine dispute as to whether a plaintiff pushing a shopping cart down an aisle was distracted from the danger posed by empty pallets on the floor she had seen just moments before).[10]

The parties again dispute Romano's mindset at the time she tripped, and whether or not she was distracted from the U-boat cart. Mariano's initially suggests that, after Romano looked at the shrimp in the display freezer, it was her intent to "keep going" and pick up her own cart. However, Mariano's then acknowledges that Romano testified that she did not know her precise intent at the time, just that she turned around from the shrimp, did not see anything in front of her other than freezer cases in front of her across the aisle, mistakenly thought she was safe, and stepped forward. [24] 3, ¶ 13, 15-17; [25] 12. Regardless of her intent, Mariano's argues that Romano could not say whether there was something that diverted her attention from the cart, and claims that she expressly testified that she was not distracted, but that "concentrating" was a better word for it. [24] 4, ¶ 24; [24-5] 24:13-15; [25] 13-14.

Romano on the other hand notes that she was not sure of her exact thought process when she turned away from the shrimp. Romano states that her

---

[10] The Court notes that the *Figas* decision, which was also cited by the court in *Scott,* is unpublished and therefore not precedential. *See Scott,* 2017 WL 3421553, at *5 n. 8. However, this Court, like *Scott,* finds the case's logic and reasoning persuasive, so it may still rely on it for support. *See id.* (citing *Zahn v. N. Am. Power & Gas,* LLC, 815 F.3d 1082, 1093 (7th Cir. 2016) (although not precedential, unpublished Illinois decisions may be cited for their "reasoning and logic")).

concentration was "directed at the shrimp" prior to the accident, that she picked up a package of shrimp to examine it, then looked at the champagne display that was impeding her path before turning and taking a step and falling. [26] 5-6; [27] 4, ¶¶ 10-11; [28]. Romano further notes that in that moment after she turned away from the freezer containing the shrimp, but before she stepped forward and tripped, she "did not see anything in front of her other than the freezers of food on the other side of the aisle," and also points out that the platform of the cart she tripped on was only eight to ten inches off the ground. [26] 6; [27] 2, ¶ 16; 4-5, ¶¶ 6, 17. Romano thus argues that she was "where she was permitted to be" and was in the act of shopping which distracted her from the cart, and she cites to several Illinois cases for the proposition that invitees engaged in shopping could foreseeably be distracted from otherwise open and obvious risks. *See* [26] 2-6 (citations omitted).

After construing the evidence and drawing all reasonable inferences in Romano's favor, and by considering what the Court concludes is "beyond reasonable question" in the video footage, the Court agrees with Romano that, even if the U-boat cart was considered an "open and obvious" condition, there is still a genuine issue of material fact as to whether the distraction exception to the open and obvious rule applies. Summary judgment is thus inappropriate.

>    1. *There is sufficient evidence from which a reasonable jury could conclude Romano was distracted.*

As to whether Romano herself was distracted, the Court finds there is sufficient evidence from which a jury could find that Romano was momentarily distracted from the U-boat cart by shopping. As Romano notes in her briefing, courts

have consistently found genuine issues of fact precluding summary judgment where there is evidence the plaintiff was distracted from an otherwise obvious hazard due to being preoccupied with shopping. *See Williams v. Walmart Inc.*, No. 18 C 1356, 2019 WL 2357043, at *4 (N.D. Ill. June 4, 2019) (collecting cases holding that "whether goods in a retail store distracted a customer is a question for the jury"); *see, e.g., Ward*, 554 N.E.2d at 233 (holding that it was reasonably foreseeable that a customer carrying a large item might be distracted from an otherwise obvious hazard); *Fetzer v. Wal-Mart Stores, Inc.*, No. 13 C 9312, 2016 WL 792296, at *17-18 (N.D. Ill. Mar. 1, 2016) (holding that, because a jury could reasonably conclude the plaintiff was distracted by Wal-Mart's merchandise displays, "[a] jury will have to determine whether the 'distraction' exception applies"). Indeed, the Restatement (Second) of Torts section discussing the distraction exception includes an illustration using exactly those circumstances to explain when the exception applies:

> The A Department Store has a weighing scale protruding into one of its aisles, which is visible and quite obvious to anyone who looks. Behind and about the scale it displays goods to attract customers. B, a customer, passing through the aisle, is intent on looking at the displayed goods. B does not discover the scale, stumbles over it, and is injured. A is subject to liability to B.

Restatement (Second) of Torts § 343A Comment f, Illustration 2. (1965).

Here, although Romano initially saw the U-boat cart with the boxes stacked on its end, the parties agree, at the very least, that when Romano began moving along the space in between the cart and the freezer she was "concentrating" on the items in the freezer, *i.e.*, the shrimp. [24] 4, ¶23; [26] 5-6; [27] 4, ¶¶ 4-7. Further, both parties

agree that, although Romano was not sure of her exact intent or what she was thinking when she turned away from the freezer, she did not see the platform of the U-boat cart, only saw the freezer cases in front of her across the aisle, and mistakenly thought she was safe to step forward. [24] 3, ¶15, 17. These undisputed facts that (1) Romano was concentrating on shrimp in the freezer just seconds before she fell, (2) when she turned she did not see the platform of the cart below her, (3) she only saw other freezer cases in front of her across the aisle, and (4) she thought she was safe to step, are sufficient facts to create a genuine dispute as to whether Romano was distracted from the otherwise obvious U-boat cart. *See, e.g., Williams*, 2019 WL 2357043, at *4 ("The undisputed facts are sufficient for a reasonable jury to find that Williams was distracted for a time while she viewed the merchandise after she first noticed [the hazard]"); *Stephen*, 2020 WL 7260803, at *5 (finding Stephen's testimony that she was distracted from the hose by a flower display "at least created a question of fact as to whether the distraction exception applies"); *see also Geleta*, 2013 WL 6797111, at *6 ("It's not a stretch to say that a customer at a grocery store may not be canvassing the ground for spills, but instead might be distracted by finding the items on her grocery list.").

Further, Mariano's emphasis on Romano's use of the word "concentrating" in her deposition testimony, as opposed to distraction, is not persuasive. *See* [25] 14 (citing [24-5] 24:13-15 ("I was concentrating, not necessarily distracted, concentrating would be a better word."). Mariano's apparently wants the Court to endorse a rule that plaintiffs such as Romano must use the precise magic word of "distracted" in

their deposition testimony in order to avail themselves of the distraction exception. But, of course, there is no requirement in the case law for such a strict rule of semantics, and courts have applied the distraction exception using words like "focused" and "concentrating" interchangeably with "distracted." *See e.g., Fetzer,* 2016 WL 792296, at *17 (finding a genuine dispute of fact as to whether the distraction exception applied where plaintiff argued she was "focused on Wal-Mart's merchandise displays"); *Green v. Jewel Food Stores, Inc.*, 799 N.E.2d 740, 744 (Ill. App. 1st Dist. 2003) ("It was foreseeable that the plaintiff might be distracted from the slippery condition, despite its obviousness, while *concentrating* on stacking the crates and talking to the defendant's dairy manager.") (emphasis added) (describing the holding in *Maschhoff v. Natl. Super Markets, Inc.*, 595 N.E.2d 665, 670 (Ill. App. 5th Dist. 1992)). In short, that Romano thought that "concentrating" was a better word than "distracted" does not preclude, as a matter of law, a finding that the distraction exception applies.

Nor does the fact that Romano generally noticed the U-boat cart prior to falling preclude the distraction exception from applying. *See, e.g., Ward*, 554 N.E.2d at 232 (finding the distraction exception applied even though "plaintiff walked past the post when entering the store and admitted he was at least 'subconsciously' aware of its presence"). As noted above, the exception may still apply if a plaintiff is distracted such that he or she "momentarily forgets" about the otherwise obvious hazard, and Illinois law does not set any "minimum" amount of time that must pass before a plaintiff can be said to potentially have forgotten about a hazard. *Scott*, 2017 WL

3421553, at *5. Here, it is difficult to identify the precise moment when Romano first noticed the cart either from the video or from the parties' statements of fact, or how much time passed between when Romano last "noticed" the cart to when she tripped over it. The entire video of the incident is only 57 seconds long, and the parties dispute exactly how Romano approached the cart along the freezer, *i.e.*, whether she shuffled sideways or "stepped around it." However, as noted above, there is a point in the video where it is "beyond reasonable question" that Romano is standing with her back to the U-boat cart, looking at a package of shrimp. [28]. She does this for approximately 15 seconds, before she places the package down and turns and trips in a matter of a few additional seconds.

Again, there is no minimum timeframe that must elapse for a jury to find that a plaintiff was distracted from a hazard. The Court thus finds that, even if the U-boat cart were "open and obvious," the fact that Romano had her back to the cart and was "concentrating" on shrimp just before turning and falling creates a genuine dispute of fact as to whether she was distracted, and this dispute must be resolved by a jury. *See id.* (despite the plaintiff avoiding the hazard twenty-eight seconds prior to falling, "whether Plaintiff was aware of the pallet jack before or at the time of his injury are disputed issues of fact that may not be resolved against him on summary judgment"); *Figas*, 2015 WL 9463700, at *3 (finding a genuine dispute as to whether the distraction exception applied where the plaintiff had seen the hazard just moments before).

29

The Court acknowledges that some of Romano's other assertions about how she was distracted are problematic, specifically whether she may have also looked at or been distracted by boxes of champaign bottles allegedly in her path. [26] 5-6; [27] 4, 11. As noted above, it is clear from the video there are boxes blocking Romano's path at the end of the freezer, but whether they contain champaign and whether Romano specifically noticed them cannot be determined "beyond reasonable question" from the video, because as she turns towards the boxes her back is to the camera. [28]. Further, Mariano's is correct that Romano's suggestion in her briefing and statement of facts that she was distracted by the champaign bottles is contradicted by her own testimony, in which she stated that she "didn't even know about the [bottles] until [plaintiff's counsel] showed them to me." [24-5] 21:14-19. However, the Court need not resolve the incongruities with respect to this specific claim at this stage, because the evidence discussed above, that Romano was "concentrating" on the shrimp just before she fell and did not see anything in front of her other than freezer cases across the aisle as she stepped and her shin made contact with the platform of the U-boat cart, is sufficient to create a triable issue of fact for the jury as to whether the distraction exception applies.

> 2. *There is sufficient evidence from which a jury could conclude Mariano's created the distraction and that it was foreseeable.*

In addition to Romano needing to show that she was distracted, the distraction must have been reasonably foreseeable to the defendant. *See Bruns*, 21 N.E.3d at 691 (quoting *Sollami*, 772 N.E.2d at 223) ("The distraction exception applies 'where the possessor [of land] has reason to expect that the invitee's attention may be distracted

. . . .'"). If a defendant "bears no responsibility for a distraction, courts frequently find that the defendant could not reasonably have foreseen it." *Scott*, 2017 WL 3421553, at *3 (quoting *Negron v. City of Chi.*, 2016 IL App (1st) 143432, ¶¶ 17-18).

Mariano's argues that any distraction was self-created and "Defendant cannot guard against the Plaintiff's injury because her subjective thoughts cannot be determined by the Defendant." [25] 13. Romano argues the risk here—that she would be distracted by Mariano's merchandise display—was foreseeable. [26] 6-7.

The Court concludes that a jury could find that the distraction was created by Mariano's and it was reasonably foreseeable. More specifically, a jury could find that Mariano's, "as the entity responsible for the layout" of its merchandising displays and U-boat carts, "'created, contributed to, or was responsible in some way' for the distraction" which diverted Romano's attention from the U-boat cart. *See Savage v. Ritchie Bros. Auctioneers (Am.), Inc.*, No. 10 CV 446, 2012 WL 1520710, at *4 (N.D. Ill. Apr. 30, 2012) (quoting *Sandoval*, 830 N.E.2d at 729). Further, Romano testified that she only approached the end of the freezer by the U-boat cart because of a "sale sign for shrimp." [24] 2, ¶ 8; [24-5] 14:7-17 ("I would never have gone over to that side if I didn't see the sales sign. I wouldn't have gone there at all."). A jury could find that Mariano's "had reason to expect" that customers would walk into the space between the U-boat cart and the freezer in order to examine the sale items, and that such customers may be at least momentarily distracted by the sale items from the cart. *See Williams*, 2019 WL 2357043, at *4 ("A reasonable jury could find that Walmart

had 'reason to expect' that customers would move into the space between the display and the stack base and be at least momentarily distracted by the merchandise.").

Further, the Court notes that the video evidence shows that Romano's path forward past the U-boat cart was blocked by a stack of boxes and a shopping cart, which could also support a finding that this accident was foreseeable. As Romano notes in her brief, the store manager Mr. Atkins testified that a lack of clear path on both sides of the U-boat cart would be a potential safety hazard. [27] 5-6, ¶ 20. Thus, construing the evidence and drawing all reasonable inferences in Plaintiff's favor, the Court believes a jury could find that it was not only foreseeable that a customer like Romano would be distracted, but that it is foreseeable that such a distracted customer could be injured by a U-boat cart that was not placed in accordance with store policy. *See Scott*, 2017 WL 3421553, at *6 (noting the court must construe the store's policy against pallets being left in aisles in plaintiff's favor at the summary judgment stage, which thus supported an inference that defendant "had reason to foresee" customers may be distracted and injured by palletized freight left in aisles).

In sum, a reasonable jury could find that Mariano's created the distraction, was aware of this risk and instituted policies to guard against such risk, and thus Mariano's owed Romano a duty to protect against the risk of tripping over the U-boat cart, even if it were open and obvious. Summary judgment is thus inappropriate.

## C. The Court Need Not Reach the Other Duty of Care Factors.

Finally, the Court must briefly comment on one other matter. As noted above, the open and obvious rule and distraction exception technically only go to the first

32

two factors of the duty of care analysis: the foreseeability and likelihood of Plaintiff's injury. This still leaves the third and fourth factors: the burden of guarding against injury and the consequences of placing that burden on Mariano's. See *Dunn*, 880 F.3d at 910 (quoting *Bujnowski v. Birchland, Inc.*, 37 N.E.3d 385, 397 (Ill. App. 2d Dist. 2015*)*). Romano does not make any express arguments related to these two factors. Mariano's argues these factors weigh against imposing a duty, because it "cannot be tasked with the consequence of knowing the Plaintiff's subjective thoughts" nor guard against "self-created" distractions. [25] 13.

The Court does not need to address these remaining factors at this stage nor make any express finding as to whether they support the imposition of a duty. Mariano's cursory arguments with respect to these factors—that it cannot be tasked with the "consequences" of knowing Romano's subjective thoughts or guard against a "self-created" distraction—are predicated on a finding that the U-boat cart is an open and obvious condition. But as the Court has held above, there is a genuine dispute of material fact as to that underlying question of whether the U-boat cart was an open and obvious condition which must first be resolved by a jury. This alone makes it unnecessary to reach the remaining factors. *See Stephen,* 2020 WL 7260803, at *5 n. 3 (declining to address third and fourth factors because defendant's argument with respect to those factors "relied on a finding that the hose was an open and obvious hazard"). Further, though Mariano's has framed the issue as involving the burden of guarding against "subjective thoughts" and "self-created distraction," the Court has found there is sufficient evidence from which a reasonable jury could conclude the

33

distraction was not "self-created" but was in fact created by Mariano's and was foreseeable. This creates another issue of fact that must be resolved before the Court can weigh the remaining factors.

In short, whether a duty exists here involves mixed questions of law and fact, and as the Court has already found several genuine disputes as to the underlying facts that would establish a duty, it must deny summary judgment regardless of the final two factors. *See Rich,* 2014 WL 5835623, at *3 ("If the duty issue is a mixed question of law and fact, the Court must deny summary judgment if there is a genuine issue as to the underlying material facts that would establish a duty."). Indeed, in the majority of the cases the Court has reviewed where courts have found genuine disputes of fact as to the open and obvious rule and/or the distraction exception, the courts have not discussed the other duty factors. *But see Scott*, 2017 WL 3421553, at *6 (finding genuine disputes of fact as to the open and obvious rule and distraction exception, but still addressing the third and fourth factors). Further, the Court is unaware of any example in either federal or state court where a court found that there were genuine disputes as to whether a condition was open and obvious and whether the distraction exception applied, but where the court also still found that defendant did not owe the plaintiff a duty as a matter of law based on the remaining two factors. Thus, the Court declines to reach these other duty factors here, as the genuine disputes of fact it has identified would preclude summary judgment regardless of the Court's consideration of the other factors.

34

* * *

In sum, for all the reasons discussed herein, the Court declines to hold as a matter of law that Mariano's owed no legal duty to Romano to guard against the accident and her resulting injuries. Mariano's motion for summary judgment must therefore be denied. *See, e.g., Scott*, 2017 WL 3421553, at *7 (applying distraction exception to the open and obvious rule and denying defendant's motion for summary judgment); *Stephen*, 2020 WL 7260803, at *4 (same, noting that "the Court cannot conclude at this stage that Defendants did not owe Stephen a duty of care"); *see also Williams*, 2019 WL 2357043, at *4 (collecting similar cases where courts have denied motions for summary judgment by defendant retail or grocery stores because a reasonable jury could find it foreseeable that customers would be distracted from open and obvious hazard's while shopping).

## Conclusion

For the foregoing reasons, the Court denies Mariano's motion for summary judgment. [23].

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 20, 2022**

35